UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-49-MOC-DCK

| | |
|---|---|
| VIZA ELECTRONICS, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ORDER |
| PARADIGM CLINICAL RESEARCH INSTITUTE, INC., et. al, | ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court on Defendants Paradigm Clinical Research Institute, Inc. ("Paradigm") and Ram Dandillaya, MD ("Dandillaya")'s Motion to Dismiss, filed pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 15). Defendants seek to dismiss Defendant Dandillaya on personal jurisdiction grounds, and they also seek dismissal of all claims other than the breach of contract claim against Paradigm.

## I. BACKGROUND AND PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff Viza Electronics, LLC, is a North Carolina limited liability company with its principal offices located in Charlotte, North Carolina. Defendant Paradigm is a corporation organized under the laws of the State of California. Dandillaya is a citizen and resident of the State of California and is an officer, owner, and founder of Paradigm. Defendant Juan De Borbon Y De Rojas, also known as Jon Rojas, is a citizen and resident of the State of California and is an officer, owner, agent and/or employee of Paradigm.

The following allegations in the Complaint are taken as true for the purposes of Defendants' motion to dismiss:

On March 11, 2020, the World Health Organization declared the COVID-19 virus a

1

pandemic. (Doc. No. 1 ¶ 9). Businesses throughout the United States were demanding access to masks to help them limit the spread and to protect employees. (Id. ¶ 10). Viza was approached by a number of customers, including Office Depot, that wished to place orders for large numbers of masks. (Id. ¶ 11). Viza is an electronics distributor that markets and sources products such as LED drivers, power adapters, and various cables and connectors, so it relied on others to help procure masks. (Id. ¶ 12).

Defendant Paradigm is a California based clinical research consortium which conducts clinical trials, and therefore expert in the medical products space. (Id. ¶ 13). Upon information and belief, Paradigm had provided supplies of personal protective equipment ("PPE") in prior pandemics. (Id. ¶ 14). After the onset of the pandemic, Paradigm announced that it was able to obtain supplies of PPE. (Id. ¶ 15).

In March 2020, Viza's Manager of Business Development Kira Skill contacted Rojas to see if Paradigm could provide masks to Viza. (Id. ¶ 16). Rojas represented to Skill that Paradigm had suppliers in China that had committed large quantities of masks to Paradigm. Rojas stated that Viza could purchase a large quantity, but that Viza would need to place an Order promptly and provide a 50% deposit to Paradigm in order to guarantee delivery of the masks by April 24, 2020. (Id. ¶ 17).

Defendant Dandillaya, through Rojas, provided Viza with a letter dated March 23, 2020. (Id. ¶ 18). In the letter, Dandillaya represented that:

> [t]hrough our international network of manufacturers, we have identified stocks of critical supplies: surgical masks, N95 masks, COVID-19 detection kits, protective suits, hand sanitizer, etc. Perhaps more importantly, several of our manufacturing partners have dedicated 100% of their capacity in an effort to meet volume requirements over the next several months.

(Id. ¶ 19 & Pl. Ex. A). The representations in the letter were false. (Id. ¶ 20).

In reliance on the representations of Rojas and Dandillaya, Viza reached out to its customers and obtained orders for large numbers of masks. (Id. ¶ 21). Specifically, Viza customer Office Depot issued an order for ten million masks at $3.50 per mask. (Id. ¶ 22). Other Viza customers also indicated they would purchase at a premium any masks that Viza could procure. (Id. ¶ 23).

In reliance on the representations of Rojas and Dandillaya, Viza issued to Paradigm Purchase Order VP20-B04U01 dated April 10, 2020 (the "Order"), in the amount of $52,000,000. (Id. ¶ 24 & Pl. Ex. B). In response to the Order, Paradigm issued an Invoice dated April 11, 2020. (Id. ¶ 25 & Pl. Ex. C).

On April 13, 2020, Viza wired to Paradigm the sum of $26,000,000 representing the deposit of 50% of the Order amount (the "Deposit"). (Id. ¶ 26 & Pl. Exs. D and E). Paradigm acknowledged receipt of the Deposit, but no masks were delivered by the promised date of April 24, 2020, or any time thereafter. (Id. ¶ 27). Instead, Paradigm admitted that its assurances that Paradigm had a dedicated supplier of masks were false, and that Paradigm could not supply any masks to Viza. (Id. ¶ 28).

Paradigm admitted it could not fill the Order and was in breach of the contract. (Id. ¶ 29). Viza was unable to fill the orders from Office Depot and other Viza customers. (Id. ¶ 30). Viza lost profits of at least $6,500,000 that it would have made selling masks to Office Depot. (Id. ¶ 31). Viza's commercial relationship with Office Depot was irreparably damaged and Viza lost Office Depot as a customer, causing additional damages. (Id. ¶ 32).

Rojas and Paradigm expressly promised that Viza would receive a full refund of all sums paid. (Id. ¶ 33). On April 22, 2020, Paradigm provided a partial return of the Deposit in the amount of $17,625,000. (Id. ¶ 34). On May 8, 2020, Paradigm provided a partial return of the

Deposit in the amount of $1,250,000. (Id. ¶ 35). On June 18, 2020, Paradigm provided a partial return of the Deposit in the amount of $4,275,000. (Id. ¶ 36).

On July 22, 2020, Paradigm provided a partial return of the Deposit in the amount of $400,000. (Id. ¶ 37). Despite repeated demands, Paradigm has made no further payments since July 22, 2020. (Id. ¶ 38). The outstanding amount of the Deposit retained by Paradigm is $2,450,000. (Id. ¶ 39).

Based on the above factual allegations, Plaintiff filed this action on February 4, 2022, alleging the following claims against Defendants: (1) fraud under North Carolina law against all Defendants; (2) breach of contract against Defendant Paradigm; (3) conversion against Defendant Paradigm; (4) unjust enrichment against Defendant Paradigm; and (5) a violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. 75-1.1 et seq. against all Defendants.

On March 24, 2022, Defendants filed the pending motion to dismiss pursuant to Rules 12(b)(6) and Rule 12(b)(2). Plaintiff has responded in opposition to the motion to dismiss, and Defendants have filed a Reply. (Doc. Nos. 16, 17). The Court held a hearing on the motion on August 15, 2022. This matter is ripe for disposition.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) provides for dismissal for "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2). When a district court considers a Rule 12(b)(2) motion based on the contents of the complaint and supporting affidavits without an evidentiary hearing, the party asserting jurisdiction bears the burden of establishing a prima facie case of jurisdiction. Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Universal Leather, LLC v. Koro AR,

4

Case 3:22-cv-00049-MOC-DCK    Document 20    Filed 09/23/22    Page 4 of 15

S.A., 773 F.3d 553, 558 (4th Cir. 2014). The standard or review is by a preponderance of the evidence. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). The court may consider affidavits submitted by both parties, but it must resolve factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction. Universal Leather, 773 F.3d at 560; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) ("[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."). The court must then determine whether the facts proffered by the party asserting jurisdiction make out a case of personal jurisdiction over the party challenging jurisdiction. Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018).

### B. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

### III. DISCUSSION

**A. Defendants' Motion to Dismiss Defendant Dandillaya for Lack of Personal Jurisdiction**

As noted, Defendant Dandillaya is the co-owner of Paradigm and resides in California. The exercise of personal jurisdiction over a nonresident defendant is proper in North Carolina when (1) there is a basis for jurisdiction under North Carolina's long-arm statute, and (2) the exercise of personal jurisdiction complies with due process. Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011). Courts construe North Carolina's long-arm statute to be coextensive with due process, such that the two-part test collapses into the single inquiry of "whether the non-resident defendant has such 'minimum contacts' with the forum state that exercising jurisdiction over it does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001)). In other words, there must be "some act by which the defendant purposefully avails itself of the privilege of

6

conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction may be exercised specifically or generally. Here, Plaintiff does not contend that this Court can exercise general personal jurisdiction against Defendant Dandillaya. Indeed, Defendant Dandillaya's activities in North Carolina have not been continuous and systematic such that the court may exercise general personal jurisdiction over him. Plaintiff argues, however, that this Court may assert specific jurisdiction over Defendant Dandillaya because Plaintiff's claims arose out of Dandillaya's purposeful contact with North Carolina.

To establish specific jurisdiction, the plaintiff must show "a sufficient nexus between [the] defendants' contact with the forum state and the nature of the claims asserted." WLD, LLC v. Watkins, 454 F. Supp. 2d 426, 432 (M.D.N.C. 2006). The Fourth Circuit has applied a three-part test for determining whether specific jurisdiction exists: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state; (2) whether the plaintiff's claim arises out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (emphasis added). For specific jurisdiction to exist, all three of the above-cited factors must be satisfied. Brown v. Advanced Dig. Sols., LLC, No. 17-0034, 2017 WL 3838640, at *5 (W.D.N.C. Aug. 31, 2017). If the plaintiff meets the first two prongs, then the burden shifts to the defendant to show that exercising jurisdiction would be unreasonable. Grober v. Mako Prods., Inc., 686 F.3d 1335, 1346 (Fed. Cir. 2012).

In arguing that this Court lacks personal jurisdiction over Defendant Dandillaya, Defendants assert that Dr. Dandillaya is a practicing California physician who has never lived North Carolina, never worked there, and has no bank accounts, real property or other assets in

the state. (Dandillaya Decl. ¶¶ 2–3). He has never travelled to North Carolina and has no ongoing personal or business connections to the state. (Id.). Defendants also note that the letter written by Dandillaya is a generic letter, not directed to anyone in particular. Finally, Defendants assert that Plaintiff's customers who ordered the masks were not located in North Carolina. Defendants contend that forcing Defendant Dandillaya to defend this suit in North Carolina would offend notions of due process.

The Court rejects Defendants' arguments and finds that the Court does have personal jurisdiction over Defendant Dandillaya. Dandillaya admits that he is an "owner of a non-resident company that had business dealings with a North Carolina entity." (Doc. No. 15-1, ¶ 10). North Carolina courts hold that this alone is sufficient to subject a defendant to personal jurisdiction. As the court explained in Acosta v. Byrum, 638 S.E.2d 246, 252–53 (N.C. App. 2006):

> Dr. Faber's motion to dismiss also alleged that defendant was not subject to personal jurisdiction in North Carolina. Dr. Faber is a citizen and resident of Alabama. He, however, is the owner of Psychiatric Associates, a company doing business in North Carolina. . . . Dr. Faber was the owner of a medical practice whose activities were carried on within North Carolina. Thus, North Carolina's long arm statute applies to Dr. Faber. . . .. As owner of a business in North Carolina, Dr. Faber purposefully availed himself within the state and invoked the protection of the laws. Thus, Dr. Faber had minimal contacts with the state. Accordingly, since the long arm statute reaches Dr. Faber and he had minimum contacts with the state, jurisdiction over Dr. Faber is proper in this matter.

See also Gunnings v. Internet Cash Enter. of Asheville, LLC, No. CIV 506CV98, 2007 WL 1931291, at *4 (W.D.N.C. July 2, 2007) (discussing Acosta and denying motion to dismiss). Furthermore, Dandillaya prepared marketing materials which Plaintiff alleges falsely advertised that a dedicated supply of masks was available. Dandillaya provided the letter, through his co-owner Rojas, to Plaintiff, a North Carolina company. Under the facts as alleged, which this Court must take as true, and construing all inferences in Plaintiff's favor, it is reasonable to infer that when Dandillaya prepared and directed the alleged false communications, he knew that the letter

8

was going to be sent to a North Carolina business, despite that the letter does not specifically address anyone in particular. It is hard to imagine that, even if Dandillaya wrote the letter initially without knowing its ultimate recipient, he no doubt learned at some point during the business deal that the letter was being used to induce a North Carolina company to pay Dandillaya's company $52 million. Thus, as an officer of Paradigm, Defendant Dandillaya "purposely availed" himself of the privileges of conducting activities in the forum state. Moreover, Plaintiff's claim clearly arises out of Defendant's forum-related activities—that is sending a letter to a North Carolina company with the intent to include a payment of $52 million. Finally, the Court finds that the exercise of jurisdiction over Defendant Dandillaya is constitutionally reasonable.

In sum, for the reasons stated herein, the Court has specific personal jurisdiction over Defendant Dandillaya. See Raycap Asset Holdings Ltd. v. Kushner, No. 320CV00363, KDBDCK, 2022 WL 301600, at *3 (W.D.N.C. Feb. 1, 2022) (court has jurisdiction over author of fraudulent letter relied upon by North Carolina company, even though the letter was not directly addressed to it); Vishay Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1065 (4th Cir. 1982) (telephone and written communications initiated from California constitute "tortious conduct" occurring within North Carolina and established personal jurisdiction over defendant). Defendants' motion to dismiss Defendant Dandillaya for lack of personal jurisdiction is denied.

### B. Defendants' Motion to Dismiss Plaintiff's Tort Claims

#### 1. Plaintiff's Claim for Fraud

North Carolina recognizes that fraud comes in a variety of forms. As the North Carolina Supreme Court has explained:

9

> While fraud has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud which avoids the definition, the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974). To state a claim for fraudulent inducement, a plaintiff need only allege "sufficient specific facts giving rise to a plausible inference that [Defendants] assurances … were false at the time they were made." Packrite, LLC v. Graphic Packaging Int'l, Inc., No. 1:17CV1019, 2019 WL 2992340, at *3 (M.D.N.C. July 9, 2019) (denying motion to dismiss fraud claim when defendant falsely stated that they would be exclusive manufacturer).

The Court finds that Plaintiff has sufficiently alleged a claim of fraud against Defendants. Here, Plaintiff alleges that in the letter to Plaintiff, Defendant Dandillaya made the following factual assertions:

- Paradigm has "evolved rapidly to help health care systems meet the increasing demands for supplies and equipment."
- Paradigm has "collaborated with international contacts."
- Paradigm has "identified stocks of critical supplies: surgical masks, N95 masks, COVID-19 detection kits, protective suits, hand sanitizers, etc."
- "[S]everal of our manufacturing partners have dedicated 100% of their capacity in an effort to meet volume requirements over the next several months."

(Doc. No. 1, Ex. A). Plaintiff alleges that these representations were false, (Doc. No. 1, ¶ 20), and the Court must assume these statements were false when ruling on the Rule 12(b)(6) motion. The Court must also assume all favorable inferences from these facts, including the inference that Paradigm was offering large quantities of N95 masks for immediate delivery. Furthermore,

10

Plaintiff alleges that Rojas stated that suppliers in China had committed large quantities of masks that would be available for immediate delivery upon receipt of a 50% deposit. (Doc. No. 1, ¶ 17). Defendants subsequently admitted that their assurances about supply had been false. (Doc. No. 1, ¶ 28). In their supporting brief, Defendants suggest that Plaintiff's reliance on Defendants' representations was unreasonable. Defendants' arguments about the reasonableness of Plaintiff's reliance present questions for a jury, not for the Court on a Rule 12(b)(6) motion. See, e.g., Solum v. Certainteed Corp., 147 F. Supp. 3d 404, 414 (E.D.N.C. 2015).

As to Defendant Dandillaya, Defendants argue in their brief that the claim for fraud against him individually is improper because it merely restates the breach of contract claim and because Dandillaya did not personally handle the sale of the masks. (Doc. No. 15, p. 18). As Plaintiff notes, however, "in [the] case of fraud by the officers, directors, managers, or stockholders of a corporation, the court shall adjudge personally liable to creditors and others injured thereby the officers, directors, managers, and stockholders who were concerned in the fraud." Lillian Knitting Mills Co. v. Earle, 74 S.E.2d 351, 356 (N.C. 1953). The North Carolina Court of Appeals has explained that when the president of a corporation was charged with conversion of a rented crane, he could be held personally liable for the conversion because he signed a certificate guaranteeing the quality of the crane at the time of the sale and admitted his participation in the sale. Esteel Co. v. Goodman, 348 S.E.2d 153 (N.C. App. 1986). The Esteel Co. court reiterated the rule that "an officer of a corporation who commits a tort is individually liable for that tort, even though the officer may have acted on behalf of the corporation in committing the wrongful act." Id. at 157.

Here, Plaintiff alleges that Dandillaya signed the letter falsely stating that dedicated supplies were available. (Doc. No. 1 ¶¶ 18–20). Dandillaya was owner and CEO of the company

11

that refused to return Plaintiff's deposit. The Court agrees with Plaintiff that Dadillaya's precise role in, and knowledge about, the contract, the wire transfer, and Paradigm's refusal to return the deposit is subject to discovery. Therefore, the Court will not dismiss Plaintiff's fraud claim against any of the named Defendants at the pleading stage. In sum, given the liberal pleading standards of Iqbal and Twombly, the Court denies Defendants' motion to dismiss Plaintiff's fraud claim.

### 2. Plaintiff's North Carolina UDTPA Claim

The elements of a claim under the North Carolina UDTPA are "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Bumpers v. Cmty. Bank of N. Va., 747 S.E.2d 220, 226 (N.C. 2013) (alteration in original). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Walker v. Fleetwood Homes of N.C., Inc., 653 S.E.2d 393, 399 (N.C. 2007) (internal quotation marks omitted). "[A] practice is deceptive if it has the capacity or tendency to deceive." Id. (alteration in original) (internal quotation marks omitted).

A plaintiff may bring a UDTPA claim where a defendant's breach of contract involved deception and egregious and aggravating circumstances. See S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 535 (4th Cir. 2002) (contractual breach that involves "egregious or aggravating circumstances" gives rise to independent claim under the UDTPA). A breaching party commits an egregious or aggravated breach when it acts deceptively "in the circumstances of [the contract's] breach." See Software Pricing Partners, LLC v. Geisman, No. 3:19-cv-00195-RJC-DCK, 2020 WL 3249984, at *10 (W.D.N.C. June 16, 2020) (quoting SciGrip, Inc. v. Osae,

12

838 S.E.2d 334, 347 (N.C. 2020)). Indeed, "deception either in the formation of the contract or in the circumstances of its breach" may rise to the level of "substantial aggravating circumstances." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989).

Here, Plaintiff alleges that the assurance of dedicated supplies of masks was false and that Defendants specifically made the assurance to induce Plaintiff to swiftly deposit $26 million to obtain desperately needed supplies. (Doc. No. 1 ¶¶ 41–46, 62–63). See S. Atl., 284 F.2d at 541 ("As a rule, misrepresentations, even negligent misrepresentations, are sufficient for an act to qualify as an unfair or deceptive trade practice."); see also Nexus Techs., Inc. v. Unlimited Power Ltd., No. 1:19-CV-00009-MR, 2019 WL 4941178, at *7 (W.D.N.C. Oct. 7, 2019) (ruling that substantial aggravating circumstances were present where breaching party "provided false information regarding their progress and performance under the agreement"); Poor v. Hill, 530 S.E.2d 838, 845 (N.C. Ct. App. 2000) ("Applicable aggravating circumstances include conduct of the breaching party that is deceptive"); Mosley & Mosley Builders v. Landin Ltd., 389 S.E.2d 576, 580 (N.C. App. 1989) (finding that breach accompanied by fraud or deception constitutes an unfair or deceptive trade practice). Given the liberal pleading standards of Iqbal and Twombly, these allegations are simply enough to state a claim for an unfair and deceptive trade practice in North Carolina.

For the foregoing reasons, the Court finds that Plaintiff has sufficiently alleged a claim under the North Carolina UDTPA. Therefore, Defendants' motion to dismiss this claim is denied.

### 3. Plaintiff's Claim for Unjust Enrichment

In North Carolina, unjust enrichment is premised on the "equitable principle that a person should not be permitted to enrich himself unjustly at the expense of another." Atl. Coast Line R.

Co. v. State Highway Comm'n, 150 S.E.2d 70, 73 (N.C. 1966). "Courts may refuse to dismiss an unjust enrichment claim and allow the claim to proceed as an alternative theory despite defendants' argument that an express contract governed the parties' relationship." Urbino v. Ambit Energy Holdings, LLC, No. CIV.A. 14-5184 MAS, 2015 WL 4510201, at *7 n.8 (D.N.J. July 24, 2015). Indeed, "multiple courts have allowed a plaintiff to plead claims under both theories of recovery in the alternative and have declined to dismiss unjust enrichment claims at the motion to dismiss stage finding such a dismissal premature." Network Commodities, LLC v. Golondrinas Trading Co., LTD., No. CIV. 11-3119 NLH/KMW, 2013 WL 1352234, at *11 (D.N.J. Apr. 1, 2013).

Here, Plaintiff's claim of unjust enrichment claim against Defendants is based on Defendants' refusal to return the balance of the deposit. Plaintiff alleges that Defendants have unjustly enriched themselves by keeping a portion of the deposit, in addition to breaching their contractual obligations to deliver the purchased masks. As Plaintiff is entitled to allege alternative claims, the Court denies the motion to dismiss this claim. See Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc., 505 F. Supp. 3d 570, 587 (M.D.N.C. 2020) (holding deposit created viable claim for unjust enrichment as an alternative to its breach of contract claim).

In sum, the Court finds that Plaintiff has sufficiently alleged a claim for unjust enrichment under North Carolina common law. Therefore, Defendants' motion to dismiss this claim is denied.

### 4. Plaintiff's Claim for Conversion

In support of its conversion claim, Plaintiff alleges that it wired its property, the deposit of $26 million, and demanded return once Defendants admitted that masks would not be

14

delivered. Plaintiff has alleged that Defendant has refused to return its full deposit despite repeated demands to do so, thereby converting the funds. Wrongfully holding a deposit is an act of conversion. See e.g., In re Walker, 416 B.R. 449, 468 (Bankr. W.D.N.C. 2009) (keeping deposit and applying to commission instead of returning it was an act of conversion). The Court finds that Plaintiff has sufficiently alleged a conversion claim against Defendants. Moreover, the Court agrees that this claim is distinct from Plaintiff's breach of contract claim. Therefore, the motion to dismiss will be denied as to this claim.

## IV. CONCLUSION

For the reasons stated herein, the Court will deny Defendants' motion to dismiss.

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss, (Doc. No. 15), is **DENIED**.

Signed: September 23, 2022

Max O. Cogburn Jr.
United States District Judge

15

Case 3:22-cv-00049-MOC-DCK   Document 20   Filed 09/23/22   Page 15 of 15