# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:22-CV-049-DCK

| | |
|---|---|
| VIZA ELECTRONICS, LLC, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>PARADIGM CLINICAL RESEARCH )<br>INSTITUTE, INC., RAM DANDILLAYA, )<br>JUAN DE BORBON Y DE ROJAS, LEONEL )<br>A. HUNT, M.D., DAVID G. NG, M.D., and )<br>KEVIN T. HSU, )<br>)<br>**Defendants.** )<br>_____ ) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Defendants' Motions To Dismiss (Document Nos. 63, 64, and 65), "Defendants' Motion To Modify Scheduling Order..." (Document No. 73), "Plaintiff's Motion For Summary Judgment..." (Document No. 79), and "Defendants' Motion To Withdraw Admissions..." (Document No. 81). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. Having carefully considered the motions, the record, and applicable authority, the undersigned will <u>grant</u> the motions to dismiss, <u>grant</u> the motion to modify scheduling order, <u>deny in part</u> the motion for summary judgment, and <u>grant</u> the motion to withdraw admissions.

### I.     BACKGROUND

Viza Electronics, LLC ("Plaintiff" or "Viza") initiated this action with the filing of a "Complaint And Demand For Jury Trial" (Document No. 1) (the "Complaint") on February 4,

2022. The case was originally assigned to the Honorable Max O. Cogburn, Jr. as the presiding Judge, and to the undersigned as the referral Magistrate Judge.

The Complaint brought claims against Defendants Paradigm Clinical Research Institute, Inc., Ram Dandillaya, M.D., and Juan De Borbon Y De Rojas. Defendants' "...Motion To Dismiss Plaintiff's Complaint..." (Document No. 15) pursuant to Fed.R.Civ.P. 12(b)(2) and (6) was filed on March 24, 2022.

Following a motion hearing on August 15, 2022, Judge Cogburn issued an "Order" (Document No. 20) on September 23, 2022, denying Defendants' "...Motion To Dismiss Plaintiff's Complaint..." (Document No. 15). Judge Cogburn held that this Court has specific jurisdiction over Defendant Dandillaya, and found that Plaintiff had sufficiently alleged claims for: fraud, unfair and deceptive trade practices ("UDTPA"), unjust enrichment, and conversion.[1] (Document No. 20).

On or about November 23, 2022, the parties consented to Magistrate Judge jurisdiction and this case was reassigned to the undersigned Magistrate Judge. See (Document Nos. 27, 28, and 30). The Court issued a "Case Management Order" (Document No. 29) on November 29, 2022.

On July 10, 2023, the undersigned granted Plaintiff's "Consent Motion To Allow Amendment Of Complaint And Amend Scheduling Order" (Document No. 49). (Document No. 50). The case deadlines were re-set as follows: mediation report – October 11, 2023; discovery completion – January 30, 2024; and dispositive motions – March 1, 2024. Id. This matter is scheduled for the undersigned's trial term beginning October 21, 2024. (Document No. 87).

---

[1] Defendants did not seek to dismiss Plaintiff's breach of contract claim.

Plaintiff's "First Amended Complaint And Demand For Jury Trial" (Document No. 51) (the "Amended Complaint") was then filed on July 14, 2023. The Amended Complaint asserts claims against Defendants Paradigm Clinical Research Institute, Inc. ("Paradigm"), Ram Dandillaya, M.D. ("Dandillaya"), Juan De Borbon Y De Rojas, a/k/a Jon Rojas ("Rojas"), Leonel A. Hunt, M.D. ("Hunt"), David G. Ng, M.D. ("Ng"), and Kevin T. Hsu ("Hsu") (all together, "Defendants"). (Document No. 51).

The crux of the Amended Complaint is that in or about March 2020, "[a]s the threat of the novel coronavirus COVID-19 gripped the world," Defendants convinced Plaintiff through a "Letter of Introduction and other misrepresentations" to place "an order with Paradigm for 20 million masks, at a cost of $52,000,000" but failed to deliver as promised. (Document No. 51, p. 1). Despite an "upfront payment deposit of $26,000,000 to Paradigm [] no masks were ever delivered by Paradigm to Viza." (Document No. 51, p. 2).

Plaintiff alleges that Paradigm made payments of $56,062.50 each to individual Defendants Dandillaya, Rojas, Hunt, Ng, and Hsu "pursuant to Defendants' finders' fee agreement to split money derived from the sale of PPE." (Document No. 51, p. 7). To date, Defendant Paradigm has provided a partial refund to Plaintiff of $23,550,000.00, leaving the "outstanding amount of the Deposit retained by Paradigm" at $2,450,000.00. (Document No. 51, pp. 2, 6-7).

Plaintiff's claims include: (1) Fraud in the Inducement (all Defendants); (2) Fraud/Constructive Fraud (all Defendants); (3) Civil Conspiracy (all Defendants); (4) Breach of Contract (Paradigm, Dandillaya, Rojas); (5) Conversion (Paradigm, Dandillaya, Rojas); (6) Unjust Enrichment (Paradigm, Dandillaya, Rojas); and (7) Alter Ego / Piercing the Corporate Veil (Dandillaya and Rojas). (Document No. 51, pp. 7-15). Plaintiff seeks compensatory and punitive

3

damages, as well as attorneys' fees and treble damages pursuant to N.C.Gen.Stat. § 75-1.1 *et seq*. (Document No. 51, p. 15).

On September 1, 2023, Defendants De Rojas, Dandillaya, and Paradigm filed Answers to the Amended Complaint. (Document Nos. 60, 61, and 62). Soon thereafter, on September 18, 2023, Defendants Hunt, Ng, and Hsu filed the now pending Motions To Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and (6). (Document Nos. 63, 64, and 65).

"Defendants' Motion To Modify Scheduling Order To Extend Discovery Completion Deadline" (Document No. 73) was filed on January 30, 2024. Plaintiff then filed its "...Motion For Summary Judgment As To Defendants Paradigm Clinical Research Institute, Inc., Leonel A. Hunt, M.D., David S. Ng, M.D., and Kevin T. Hsu" (Document No. 79) on March 1, 2024.

Also pending before the Court is "Defendants' Motion To Withdraw Admissions . . . And To Order Defendants' Responses To Requests For Admissions Timely" (Document No. 81) on March 6, 2024.

The pending motions have been fully briefed and are ripe for review and disposition.

## II. STANDARD OF REVIEW

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional

4

> basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676. (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F.Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Industries, Inc. v. Seim S.R.L., 3:05-CV-420-MU, 2006 WL 3780422 at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction...." Id.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id.

5

Once the movant's initial burden is met, the burden shifts to the nonmoving party. Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011). The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations. Id.

### III. DISCUSSION

**A. Motions To Dismiss (Document Nos. 63, 64, and 65)**

The pending motions to dismiss filed by individual Defendants Hunt, Ng, and Hsu (together, "Moving Defendants") present the same legal issues and very similar facts.[2] (Document Nos. 63, 64, and 65). "Plaintiff's Response In Opposition..." (Document No. 69) addresses all three motions to dismiss, as does "Defendants Joint Brief In Reply..." (Document No. 72). Likewise, the undersigned will address the three motions together. In short, the undersigned finds that the claims against the Moving Defendants should be dismissed for lack of personal jurisdiction.

Questions of jurisdiction are answered by a two-step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the

---

[2] It is unclear why Defendants, who are represented by the same counsel and make nearly identical filings, did not file a single motion to dismiss and supporting memorandum. See LCvR 7.1(c).

6

U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49 (W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 295 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004)).

Here, there is no suggestion that there are the kind of "substantial" or "continuous and systematic" contacts or activities in the forum state to support a finding of general jurisdiction. Therefore, the question before the Court is whether Plaintiff has satisfied its burden of establishing that personal jurisdiction exists over Defendants Hunt, Ng, and Hsu based on specific jurisdiction. Moving Defendants all assert that Plaintiff Viza is unable to demonstrate they have sufficient minimum contacts with North Carolina to justify an exercise of specific personal jurisdiction over

them in connection with this dispute.  (Document No. 63, p. 1;  Document No. 64, p. 1;  Document No. 65, p. 1).

Moving Defendants note that they are not owners of Paradigm, not involved with Paradigm's alleged business deal with Viza, and not responsible for any direct communications between Paradigm and Viza that form the basis of this dispute.  (Document No. 63, pp. 11-12; Document No. 64, p. 3;  Document No. 65, p. 3).  Moreover, Moving Defendants contend that they have "no contacts whatsoever with North Carolina," do not own real property or business offices here, and have not visited the State.[3]  Id.  Each of these Defendants resides in Los Angeles, California, and has never worked or lived in North Carolina, and has no bank accounts or personal business connections to the State.  (Document No. 63, p. 16;  Document No. 64, p. 7;  Document No. 65, p. 7).

Defendants Hunt and Hsu further contend that they did not work on the "Letter of Introduction" referenced in the Amended Complaint, they were not involved in deciding who, if anyone, it would be sent to, and they were not involved in disseminating the "Letter of Introduction" to solicit purchase orders.  (Document No. 63, p. 17;  Document No. 65, p. 8) (citing Document No. 51, p.4).  Defendant Ng makes a similar statement, but acknowledges that he "may have contributed" to the "Letter of Introduction" but was not involved with disseminating it. (Document No. 64, p. 8) (citing Document No. 51, p. 4).

Applying relevant legal authority, the Moving Defendants argue that the exercise of specific personal jurisdiction over them "would not only offend 'traditional notions of fair play

---

[3] The only noted exception is that Defendant Hunt maintains a friendship with a medical colleague who lives/works in North Carolina, and "precisely once in his life" he visited North Carolina on a vacation. (Document No. 63, p. 12).

8

and substantial justice,' it would turn such a concept on its head." (Document No. 63, p. 22; Document No. 64, p. 13; Document No. 65, p. 12) (citing Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945))). Each Moving Defendant further argues that the Amended Complaint "lacks any allegations showing" he "purposefully availed himself of the privileges of conducting business in North Carolina." Id.

In response, Plaintiff argues that the Court has jurisdiction "[u]nder what has come to be known as the 'effects test,' [which provides that] courts "may exercise personal jurisdiction over a non-resident defendant who is a primary participant in an alleged wrongdoing directed at a resident in the forum state." (Document No. 69, p. 5) (citing Pan-Am. Prods. & Holdings, LLC, R.T.G. Furniture Corp., 825 F.Supp. 2d 664, 684 (M.D.N.C. 2011)). "The test has three prongs: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in a forum that can be said to be the focal point of the harm; and (3) the defendant expressly aimed tortious conduct at the forum in a manner that the forum can be said to be the focal point of it." Id.

Plaintiff suggests that the first two prongs of the "effects test" are easily satisfied, and that the third prong is satisfied because the Amended Complaint alleges that Defendant Hunt sent the "Letter of Introduction" to a physician located in Raleigh, North Carolina, and that Defendant Rojas sent the "Letter of Introduction" to Kira Skill ("Skill") who was handling PPE sales and marketing for Viza. (Document No. 69, p. 6); see also (Document No. 51, p. 4).

In support of its position, Plaintiff contends that "communications show that Dr. Hunt made the same misrepresentations as the other Defendants, providing further evidence of the

9

conspiracy." (Document No. 69, p. 7) (citing Document No. 69-5; Document No. 69-7). Next, Plaintiff contends that Dr. Ng "admits that he was involved in drafting the Letter of Introduction." Id. (citing Document No. 64-1, ¶¶ 7-8). Plaintiff then asserts that Hsu "admits that he 'connected Viza personnel with my vendor contacts in Asia.'" (Document No. 69, p. 8) (citing Document No. 65-1, ¶4).

Plaintiff also presents an alternative theory of specific jurisdiction – "conspiracy jurisdiction." (Document No. 69, p. 9). "Specific personal jurisdiction based on conspiracy jurisdiction has three elements: '(1) a conspiracy (2) in which the defendant participated and (3) a co-conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy.'" Id. (citing Youming Jin v. Ministry of State Sec., 335 F.Supp.2d 72, 78 (D.D.C. 2004)).

Plaintiff argues that "all the Defendants conspired to draft the Letter of Introduction and sell PPE," and then concludes that "[s]ince at least three co-conspirators engaged in overt acts directed at North Carolina, all the Defendants are subject to jurisdiction here." Id.

In reply, Moving Defendants first summarize their position as follows:

> To be clear—none of these newly-added Defendants is alleged to have contracted with Viza about PPE; none are claimed to have communicated with Viza directly about the subject matter of the FAC, and there are no direct representations attributed to them. . . . Each defendant has declared under oath they did not participate in a conspiracy, did not draft the letter in question, did not provide it to Viza, did not receive payment from Viza and have no stake in Viza's contract partner, co-defendant Paradigm.
>
> On these facts, it would be a tremendous (and unfair) burden to hail these non-residents across the country into Federal Court in North Carolina to defend themselves in a case having almost nothing to do with them.

10

(Document No. 72, pp. 2-3). The reply brief then focuses on three main arguments rebutting Plaintiff's claim of jurisdiction.

### 1. Effects Test

Moving Defendants argue that Plaintiff's reliance on the "effects test" is misplaced because none of them "aimed any of their alleged business activities at North Carolina such that this forum can be said to be the *focal point* of any of their alleged activities." (Document No. 72, pp. 3-4). Even construing the Amended Complaint in the light most favorable to Plaintiff, "none of these defendants did anything that could be remotely construed as making North Carolina the focal [point] of anything they are alleged to have done here." (Document No. 72, p. 4). "The simple reality is all communications regarding the subject matter of this dispute were, according to the FAC, between Viza representatives and defendant Rojas." (Document No. 72, p. 5) (citing Document No. 51, p. 4).

Moving Defendants also argue that the focal point of the underlying transaction in this lawsuit "was a variety of locations throughout not only the country, but also throughout the world." (Document No. 72, p. 6). None of the contractual duties were to occur in North Carolina; none of the manufacturers or customers are alleged to be in North Carolina; and "not even the product, which is the subject of this dispute, would have spent a minute of time in North Carolina had this alleged deal been successful." Id. The underlying Purchase Order was transmitted by Plaintiff to Paradigm in California; Plaintiff wired funds to Paradigm's California bank; and Plaintiff directed that product be shipped to California, Georgia, and Illinois – not North Carolina. Id.

Moving Defendants conclude the "effects test" does not support personal jurisdiction over Hunt, Ng, and Hsu on the facts alleged in the Amended Complaint. (Document No. 72, p. 7).

11

### 2. Traditional Specific Jurisdiction Analysis

Next, Moving Defendants re-assert arguments in support of their position that it would be patently unfair to require them to defend an action in North Carolina based on communication and business dealing that they had little, if any, involvement in. (Document No. 72, p. 7). Defendants effectively argue that:

> none of these defendants has evinced the required purposeful availment for it to be fair to hail them across the country, leaving their medical practices, businesses, and family behind, to defend themselves against Viza's far-flung claims. Apart from defendant Hsu making a connection between Viz[a] and his Asian contacts (unrelated to this transaction), none of these defendants had any contact with Viza; did not prepare or transmit any communications directed specifically to Viza; did not contract with or make any promises to Viza; did not take any money from Viza; and have no stake or interest in Paradigm—the entity in which co-defendant Dandillaya's ownership interest was, in the words of Judge Cogburn, "alone sufficient to subject [Dandillaya] to [this Court's] personal jurisdiction." (Dock. No. 20 at pg. 8)

(Document No. 72, p. 8).

Moving Defendants then conclude that "applying the traditional notions of fair play and substantial justice it is clear these defendants did not purposefully avail themselves of the privilege of conducting business in North Carolina." Id.

### 3. Conspiracy Theory of Jurisdiction

In their final argument, Moving Defendants assert that it is far from clear that the conspiracy theory of jurisdiction Plaintiff relies on is applicable under North Carolina state law or precedents from within the Fourth Circuit. (Document No. 72, p. 9) (citing Boon Partners v. Advanced Financial Concepts, Inc., 917 F.Supp. 392, 397 (E.D.N.C. 1996) ("[P]laintiffs' conclusory allegations of a conspiracy between defendant Elborne Mitchell and other defendants

12

is insufficient to create jurisdiction under the 'conspiracy theory of personal jurisdiction,' **a theory not yet adopted by the Fourth Circuit**.") (citing McLaughlin v. McPhail, 707 F.2d 800, 807 (4th Cir. 1983))) (emphasis added).

Moreover, Moving Defendants argue that this Court would be justified in refusing to apply the conspiracy theory of jurisdiction because "it does not appear that [the North Carolina Supreme Court] has ever adopted this theory and has instead relied on a more traditional analysis." (Document No. 72, p. 9) (quoting Stetser v. TAP Pharm. Prods., 162 N.C.App. 518, 521 (2004)).

Moving Defendants contend that even if the Court applied this theory, they cannot be subject to this Court's jurisdiction on the facts alleged in the Amended Complaint because they have not purposely availed themselves of the rights and benefits of doing business in North Carolina. (Document No. 72, p. 9). Under the conspiracy theory of jurisdiction, Moving Defendants note that "there must be "substantial acts in furtherance of the conspiracy . . . **performed in the state**" and it must be shown "the conspirator knew or should have known these []acts would be performed." (Document No. 72, p. 10) (citing Stetser, 162 N.C.App. at 521) (quoting Hanes Cos. v. Ronson, 712 F.Supp. 1223, 1229 (M.D.N.C. 1988)) (emphasis added).

Although Plaintiff argues that all Defendants conspired to draft the Letter of Introduction and sell PPE, there is no evidence [or allegation] that "this letter was drafted with a view toward it being sent to North Carolina residents." Id. Moving Defendants contend that their alleged involvement "in crafting the letter with no known target recipients (let alon[e] North Carolina residents) is not meaningful evidence of purposeful availment." (Document No. 72, p. 11).

13

Moving Defendants conclude that "no matter the theory applied, these moving defendants have not subjected themselves to this Court's jurisdiction by the actions attributed to them in the FAC and they should be dismissed."  (Document No. 72, p. 12).

The undersigned finds Moving Defendants Hunt, Ng, and Hsu's arguments that this Court lacks personal jurisdiction to be persuasive, and will, therefore, order that their motions to dismiss be granted.  Since the arguments pursuant to Fed.R.Civ.P. 12(b)(2) are compelling, and adequate cause for dismissal, the undersigned will respectfully decline to address the 12(b)(6) arguments.

Like Moving Defendants, the undersigned is more inclined to apply this Court's traditional specific jurisdiction analysis that is described above, but even applying Plaintiff's "effects test" or "conspiracy theory of jurisdiction," the undersigned agrees that the allegations in the Amended Complaint do not adequately support personal jurisdiction over Hunt, Ng, and Hsu.  In short, the tests require:  (1) tortious conduct expressly aimed "at the forum in a manner that can be said to be the focal point of it";  (2) an overt act in furtherance of a conspiracy performed within the forum; and/or (3) purposeful availment of the privilege of conducting activities in North Carolina.  Here, viewed in the light most favorable to Plaintiff, the Amended Complaint alleges that Defendants worked together to draft a "Letter of Introduction" to promote the sale of PPE "across the country." (Document No. 51, pp. 3-4).  However, there does not appear to be any indication or allegation that the Moving Defendants took any actions directed at North Carolina related to the claims in this lawsuit, or were otherwise involved in any agreement or communications between Plaintiff and Defendants Paradigm, Dandillaya, or Rojas.

At most, it is alleged that Hunt had some contact with a medical colleague in Raleigh, North Carolina that is completely unrelated to the dispute underlying this action.  See (Document

14

No. 51, p. 4). Moreover, Plaintiff's evidence regarding a transaction with a Raleigh entity seems to be that "whatever was ordered was delivered," unlike the allegation in this matter that no products were delivered.  See (Document No. 69-4, p. 3).

To the extent there is evidence that Hsu "connected Viza personnel with my vendor contacts in Asia," that "limited communication" is also not alleged to be related to the instant action and its underlying claims.  (Document No. 69, p. 8) (quoting Document No. 65-1, p. 2). Apparently, "Hsu was doing what he could to allow Viza direct access to the market for the products it was seeking."  (Document No. 72, p. 11).

One of the cases relied on by Plaintiff in support of its application of the "effects test" is instructive, and appears to actually be more supportive of Defendants' position.  (Document No. 69, p. 8).

> The third prong of the effects test "requires the [d]efendant[ ] to have expressly aimed their tortious activity at [the forum state.]" *Hunter*, 2016 WL 5415761 at *6.  It is not sufficient for the defendant to know that a plaintiff could be harmed in the forum state. . . . Taken together, these cases show that **the third prong of the effects test is met when a defendant aims its tortious activity at the forum state by intentionally targeting residents of that state**.

Pet Specialties, LLC v. Navisiontech, Inc., 2019 WL 4773623, at *7 (M.D.N.C. Sept. 30, 2019) (citations omitted) (emphasis added).  Here, Plaintiff does not allege that Moving Defendants knew Plaintiff would be harmed in North Carolina or that they intentionally targeted tortious activity at North Carolina residents.

Applying the Fourth Circuit's three-part test, the undersigned does not find that the Amended Complaint adequately alleges that (1) Moving Defendants purposefully availed themselves of the privilege of conducting activities in North Carolina;  (2) that Plaintiff's claims

15

arise out of any activities by these Defendants directed at the State; or (3) that the exercise of personal jurisdiction over these residents of California would be constitutionally reasonable under the circumstances of this case. See New Wellington, 416 F.3d at 295 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004)).

Based on the foregoing, the undersigned will grant Defendants' Motions To Dismiss (Document Nos. 63, 64, and 65).

## B. "Defendants' Motion To Modify Scheduling Order..." (Document No. 73)

Next, Defendants seek an extension of the discovery deadline to complete fact witness depositions. (Document Nos. 73 and 74). Defendants specifically seek "three (3) fact-based witness depositions to include Kira Skill, Jeffrey Skill and Robert Zamora." (Document No. 74, p. 4).

Defendants filed the instant motion on the date of the current discovery deadline – January 30, 2024. Defendants note, *inter alia*, that their counsel was in "an extremely violent car crash causing him to be out of the office for March and April 2023," and that the parties agreed in July 2023, to stay discovery until mediation was completed in the Fall of 2023. (Document No. 74, pp. 2-3). The parties reached an impasse at their mediation on October 20, 2023. (Document No. 74, p. 3). Defendants also seem to suggest that discovery efforts were delayed based on the pending motions to dismiss discussed above. (Document No. 74, p. 4). Defendants argue that the requested depositions are critical to their defense and trial preparation. Id.

"Plaintiff's Response In Opposition..." asserts that Defendants have failed to be diligent in conducting discovery and that allowing the requested extension would be inconsistent with the Court's scheduling order. (Document No. 75). Plaintiff further argues that Defendants' excuses

16

for delays in conducting discovery are unavailing and do not support a finding of "good cause" to modify the existing schedule. Id.

"Defendants' Reply..." argues that asking Plaintiff to produce three (3) fact witnesses it intends to call at trial is not a great burden. (Document No. 78, p. 5). Defendants note that they are not seeking to broaden the scope of this dispute or to add additional parties or claims; rather, they seek the limited discovery of the proposed depositions to "avoid surprise at trial and the attending prejudice." (Document No. 78, p. 6).

The undersigned finds that this motion presents a close call. The undersigned is not convinced that Defendants' failure to conduct discovery between October 2023 and January 2024 is well-founded. However, the Court prefers that this case be resolved on the merits and agrees that allowing limited discovery, even at this stage of the litigation, will cause Plaintiff little, if any, prejudice.

Based on the foregoing, the undersigned will grant the motion with modification, as follows. Defendants may conduct up to three (3) depositions of Kira Skill, Jeffrey Skill and/or Robert Zamora. The total time allowed for these depositions is fourteen (14) hours, to be conducted at a location and on dates convenient to Plaintiff and its counsel, in Charlotte, North Carolina, unless otherwise agreed by the parties. However, Defendants' depositions shall be completed by **August 30, 2024**.

**C. "Plaintiff's Motion For Summary Judgment..." (Document No. 79)**

Plaintiff seeks summary judgment as to Defendants Hunt, Ng, Hsu, and Paradigm. (Document No. 79). Notably, Plaintiff seeks summary judgment against Moving Defendants "based on the admitted facts from Plaintiff's Request for Admissions" and "as to liability only,

17

Case 3:22-cv-00049-DCK   Document 89   Filed 07/15/24   Page 17 of 20

against Paradigm Clinical Research Institute, Inc. for breach of contract." (Document No. 79, p. 1).

Based on the foregoing dismissal of Hunt, Ng, and Hsu, as well as the decision to allow the remaining Defendants to conduct some limited discovery, the undersigned will <u>deny as moot</u> Plaintiff's motion as to Defendants Hunt, Ng, and Hsu, and take Plaintiff's motion under advisement as to Defendant Paradigm, pending a motion hearing. The undersigned is persuaded that the Court's consideration of the motion for summary judgment for breach of contract against Paradigm may be assisted by supplemental briefing and/or oral arguments.

The undersigned will, therefore, direct each side to file a supplemental brief of **five (5) pages or less**, regarding Plaintiff's motion for summary judgment against Paradigm, on or before **September 10, 2024**. In addition, counsel for the remaining parties shall appear for summary judgment hearing on **September 24, 2024**, at 10:00 am in Courtroom 1A of the Charles R. Jonas Federal Building & Courthouse.

### D. "Defendants' Motion to Withdraw Admissions..."

In the final pending motion, Defendants Hunt, Ng, and Hsu seek an Order from the Court that "withdraw[s] the admissions alleged by Plaintiff, Viza Electronics, LLC ("Viza") to have been conclusively established . . . and to Order that Defendants Responses to Requests for Admissions served on March 24, 2024 be deemed timely." (Document No. 81). Although this motion may also be mooted by Moving Defendants' dismissal, to clarify the record, the undersigned finds good cause to allow the requested relief.

It appears that the crux of this motion/issue is that Moving Defendants are alleged to have failed to provide timely responses to discovery requests, including Requests for Admissions, to

Plaintiff.  See (Document Nos. 81 and 84); see also (Document No. 81-5).  Counsel for Defendants contends that Moving Defendants "did not intend to admit the factual and legal averments" in Plaintiff's Requests for Admission;  rather their responses were a few days late due to a calendaring error.  (Document No. 81-2).  Apparently, Plaintiff contends that the "Admissions" should be deemed as admitted based on Moving Defendants' alleged failure to provide timely responses.  (Document No. 84).

After careful consideration of the briefs, the record of this case, and the foregoing decision to dismiss the Moving Defendants, the undersigned will grant "Defendants' Motion To Withdraw Admissions Pursuant to Federal Rule Of Civil Procedure 36(b) And To Order Defendants' Responses To Requests for Admissions Timely" (Document No. 81).  Therefore, Moving Defendants' responses to Plaintiff's Requests For Admission are accepted by the Court.  See (Document No. 81-5).

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' Motions To Dismiss (Document Nos. 63, 64, and 65) are **GRANTED**.  The claims against Leonel A. Hunt, David G. Ng, and Kevin T. Hsu are **DISMISSED**.

**IT IS FURTHER ORDERED** that "Defendants' Motion To Modify Scheduling Order..." (Document No. 73) is **GRANTED with modification** as described herein.  Defendants shall complete depositions by **August 30, 2024**.

**IT IS FURTHER ORDERED** that "Plaintiff's Motion For Summary Judgment..." (Document No. 79) is **DENIED AS MOOT** as to Defendants Hunt, Ng, and Hsu.  The motion

19

<u>remains pending</u> as to Defendant Paradigm. The parties shall submit supplemental briefing on **September 10, 2024**, and appear at a hearing on **September 24, 2024**, as directed herein.

    **IT IS FURTHER ORDERED** that "Defendants' Motion To Withdraw Admissions..." (Document No. 81) is **GRANTED**. The Court accepts Moving Defendants' Responses to the Requests for Admissions (Document No. 81-5) as timely.

    **SO ORDERED**.

Signed: July 15, 2024

_____
David C. Keesler
United States Magistrate Judge

20

Case 3:22-cv-00049-DCK  Document 89  Filed 07/15/24  Page 20 of 20